## ARGUED AND DETERMINED

### IN THE

## SUPREME COURT OF THE STATE OF GEORGIA,

### AT SAVANNAH,

### JANUARY TERM, 1850.

No. 1.—EDWIN M. PENDERGRAST and others, plaintiffs in error, vs. O. FOLEY, administrator of F. Foley, deceased.

[1.] In a Court of Law, the general rule is, that when the Statute of Limitations begins to run, it continues to run, unless its progress is arrested by some positive legislative enactment.

[2.] In Courts of Equity, *fraud* has been held to be an *exception* to the operation of the Statute, until the *discovery* of the fraud.

[3.] The interest of infants, as contemplated by the Act of 1817, against which the Statute of Limitations does not run, must be such an interest, as will enable them to maintain an action in their own name by their guardian; as, where the legal title to the property is vested in them.

[4.] Where the title to *personal* property of a testator or intestate, vests in his executor or administrator, and the Statute of Limitations has operated as a bar to the right of such executor or administrator to maintain an action therefor against one who has converted it, the right of the infant *cestui que trusts* of such executor or administrator, will be also barred by the Statute.

In Equity, in Chatham Superior Court. Tried before Judge FLEMING, February, 1849.

Patrick Pendergrast, a citizen of Savannah, being in bad health, left this State in 1830, for Ireland, leaving Daniel Foley as his general agent to manage his property, consisting of several ne-

VOL. VIII 1

groes, drays, and some real estate.   The immediate management of the drays was under the control of Andrew Dixon.   On the 1st November, 1830, all the negroes and drays of Pendergrast were sold at public auction by Daniel Foley, and the negroes were all purchased by him.

In 1832, the last will and testament of Patrick Pendergrast was admitted to probate, and the executors qualified under the same. The executors had a settlement with Daniel Foley, and received from him the amount of the auction sales.   Foley failed to pay over the amount received from Dixon for profits of drays previous to sale at auction.   Andrew Dixon intermarried with the only daughter of Daniel Foley, and after his death, on 18th April, 1842, Dixon and wife mortgaged two of these negroes, Sam and George, to Ebenezer Jenckes, for the payment of $600.   Subsequently, the mortgage was foreclosed, and the negroes sold by the Sheriff, and bought by Francis Foley, September, 1842.

In 1845, Edward Pendergrast and Philip Reily and Wife, (formerly Julia Ann Pendergrast) the legatees under the will of Patrick Pendergrast, brought an action of trover against Francis Foley for the two negroes, Sam and George.   There was a verdict for the plaintiffs, and an appeal entered.

Pending the appeal, Francis Foley filed his bill on the Equity side of Court, setting forth that he was a purchaser for value without notice, and those under whom he claimed had been in adverse possession for more than four years.   The bill prayed a perpetual injunction.

The answer of Pendergrast and Reily and Wife, set forth the foregoing facts; and farther, that the purchase by Daniel Foley was fraudulent and void; that Dixon had full knowledge of the fraud; that defendants were minors at the time of the sale, and but lately came of age, and had no knowledge of the fraud until within the last few years; that the executors assented to the legacy to them before the settlement, and that so soon as their assent was given, the Statute of Limitations ceased to run.   The assent set up by the defendants, was the payment for board and clothing of the minors shortly after the qualification of the executors.

Upon the trial, much testimony was introduced, not necessary to be here inserted.

The Court charged the Jury at some length, to which charge, the following errors are assigned:

1st. Because the Court charged the Jury, that when notice of the auction sale, in 1830, of said slaves was brought home to the executors, that inasmuch as that sale was the fraud, the fraud being thus discovered to the executors, that the bar of the Statute commenced.

2d. Because the Court charged the Jury, that the possession of Andrew Dixon (whether he had or had not knowledge of the fraud) of these slaves, had barred the right of the defendants thereto.

3d. Because the Court charged, that the Act of 1817 did not protect the *interest* of the minor legatees of Patrick Pendergrast, but that the executors being barred, the said interest of the minors was also barred.

4th. Because the Court charged, that the appropriation of the profits and income of the estate of Pendergrast, to the maintenance and support of the defendants, (who were sole legatees under said will,) did not, in law, constitute such an assent on the part of the executors, as to vest the legal title to the slaves in the legatees, so as to bring them under the provision of the Act of 18th December, 1817.

5th. Because the Court charged, that the defendants were barred by the Statute of Limitations from any claim to said slaves, when neither D. Foley, Dixon, or F. Foley, had separately had possession for the length of time prescribed by the Statute.

R. M. CHARLTON and JOHN E. WARD, for plaintiffs error, cited the following authorities :

*Michoud vs. Girod,* 4 *Howard's Sup. Ct. Rep.* 561.    4 *Blackf.* 84.    5 *Ga. Rep.* 212.    *Ward on Leg.* 364, 7.    2 *Williams on Extrs.* 984.    *Matthews on Extrs.* 176, 177.    *Comyn's Dig. title Administration, c.* 6.    *Paramour vs. Yardley, Plowden,* 539, 544. *Prince,* 227, 229.    *McLeod vs. Rogers,* 2 *Richardson,* 20, 22.    1 *Hall's Jurisprudence,* 225. 226.    *Tillinghast's Adams,* 491.

WM. LAW, for defendant in error, cited the following authorities :

*Harpending vs. The Dutch Church,* 16 *Peters,* 455, 493.    *Paschal, adm'r vs. Davis,* 3 *Kelly,* 262.    *Hovenden vs. Annesley,* 2 *Sch.*

*& Lef.* 630.　3 *Pet.* 52.　10 *Pet.* 223.　17 *Ves.* 97.　1 *Kelly,* 388, 538, 379.　4 *McCord,* 423.　*Lewin on Trusts,* 24 *Law Lib.* 604. *McPherson on Infants,* 41 *Law Lib.* 540.　3 *P. Wms.* 309.　2 *Ball & Beatty,* 71.　20 *Pick.* 2.　1 *McLean,* 533.　*Prince,* 578. 2 *Treadway's Const. Rep.* 549.　1 *N. & McC.* 296.　3 *McCord,* 451.　1 *Bailey,* 504.　1 *Bailey,* 505.

*By the Court.*—WARNER, J. delivering the opinion.

[1.] The main question involved in this case is, whether Francis Foley, the original defendant in the action of trover, was protected by the Statute of Limitations from a recovery of the two slaves, Sam and George, in a suit instituted by the legatees of Patrick Pendergrast, deceased.　In November, 1830, the negroes were sold by D. Foley, at auction, as the property of Patrick Pendergrast, and purchased by D. Foley, who was the *agent* of Pendergrast.　The negroes passed from D. Foley into the possession of one Andrew Dixon, and were mortgaged by Dixon to Jenckes, and subsequently sold, on the foreclosure of the mortgage, at Sheriff's sale, and purchased by Francis Foley, in 1842. Patrick Pendergrast died, leaving a will, by which H. Cassidy and L. O'Byrne were appointed his executors.　In January, 1832, the executors of Patrick Pendergrast were qualified to execute his will.　In March, 1832, the executors of Pendergrast had a settlement with D. Foley, the agent of Pendergrast, who sold the negroes at auction, in 1830, for the proceeds of the sale of the negroes, and received from said agent the amount of the sale thereof. In June, 1845, the legatees, under the will of P. Pendergrast, instituted their action of trover against the present defendant's intestate, Francis Foley, who was the purchaser of the negroes at the Sheriff's sale.　Pending the action of trover, a bill was filed by the defendant in that action against the plaintiffs therein, praying for a perpetual injunction; and upon the trial of that bill in the Court below, the question in regard to the Statute of Limitations was made.　From the time of the qualification of the executors of Pendergrast, and the settlement by them with D. Foley, in 1832, to the time of the commencement of the action of trover against Francis Foley, who claimed, under the title derived from Daniel Foley, more than twelve years had elapsed.　The plaintiffs

in the action of trover were therefore barred by the Statute of Limitations, provided the Statute run against them.

The Court below decided that the legatees, under the will of Pendergrast, were barred by the Statute, and there was a decree rendered, making the injunction perpetual; whereupon, the legatees excepted, and now assign the same for error here. In a Court of Law, the general rule is, that when the Statute of Limitations once begins to run, it continues to run, unless its progress is arrested by some positive legislative enactment. *Ballantine on Limitations*, 60. *Peek vs. Randall*, 1 *John. Rep.* 165. *Administratrix of McCollough vs. Speed*, 3 *McCord's Rep.* 455. *Baring vs. McGee*, *Ibid*, 452.

[2.] In Courts of Equity, *fraud* has been held to be an exception to the operation of the Statute, until the *discovery* of the fraud. *Brooksbank vs. Smith*, 2 *Younge & Collier*, 58. *Hovenden vs. Lord Annesley*, 2 *Schoale & Lefroy*, 634. The plaintiffs in error in this case insist upon two grounds to take it out of the Statute. First, that there was *fraud* in the settlement with the executors by D. Foley, and secondly, that the legatees of Pendergrast were *infants* at the time the settlement with the executors by D. Foley took place, for the negroes sold at auction by him. With regard to the alleged fraud in the settlement, the record does show that D. Foley had received various sums of money for the testator, designated as "dray money," for which he did not account; but he did fairly account to the executors for the proceeds of the sale of the negroes, the *specific property* now sought to be recovered. The sale of the negroes by D. Foley, and the receipt of the "dray money," were two separate and distinct transactions. He has accounted for, and paid over to the executors, the entire proceeds of the sale of the negroes, and it would not be equitable that the legatees should receive the proceeds of the negroes, and then recover them in an action of trover. If D. Foley fraudulently concealed from the executors the fact that he had in his hands other effects of their testator, then, he or his legal representatives, are responsible to the proper parties interested therefor, and the question of the application of the Statute to such fraudulent concealment, will naturally arise whenever a recovery of such concealed effects shall be sought in the proper tribunal. The legatees of P. Pendergrast were infants at the time of the settlement made with D. Foley by the executors, for the sale of the negroes,

in 1832, and the question is, whether, inasmuch as the executors are barred by the Statute of Limitations, the infant legatees are also barred? Admitting that the sale of the negroes by D. Foley was illegal, yet, the executors knew of the sale after their qualification, and ratified it by receiving the proceeds of such sale, and the Statute commenced running against their right to sue for and recover the negroes, from the time of the settlement therefor with D. Foley, who was the purchaser of that specific portion of their testator's estate. D. Foley's title to the negroes was *adverse* to that of the executors, as is the title of those who claim under him.

[3.] But the counsel for the plaintiffs in error contend, that the legatees had an interest in the negroes, and therefore, the Statute did not run against them according to the provisions of the Act of 1817. The first section of the Act of 1817 declares, that the Statute of Limitations, when it has commenced running, shall not so operate, as to defeat the *interest* acquired by idiots, lunatics or infants, but shall cease until the removal of the disabilities of such persons, or the arrival of such infant to the age of twenty-one years. *Prince*, 579. The title to the *personal* property of the testator vested in his executors, and they had the legal right to sue for it. The legatees had not the legal right to sue for the property, until the assent of the executors. The record does not show that the executors ever assented to the legacy of these specific negroes, although the executors did make provision for the support of the infants out of their testator's estate. The appropriation of funds sufficient for the maintenance and support of the infants, during their minority, out of the estate of their testator, is not sufficient, in our judgment, to establish the fact that the executors assented to the legacy of these specific negroes, even by implication, so as to divest the title of the executors thereto, and vest the same in the legatees. The interest of the infants, contemplated by the Statute of 1817, must be such an interest as would enable them to maintain a suit, in their own names, for the property; as, where the legal title to lands is cast upon the infant heirs of the deceased ancestor. In *Wych vs. The East India Company* (3 *P. Williams*, 309,) it was held, that where an executor, administrator, or trustee for an infant, who neglects to sue within the time prescribed by law, the Statute of Limitations shall bind the infant. In *Hovenden vs. Lord Annesley*, Lord *Redesdale* says, "a *cestui que trust* is always barred by length of time operating against his trus-

Pendergrast and others *vs.* Foley.

tee." 2 *Schoales & Lefroy*, 628. See also, *Pentland vs. Stokes*, 2 *Ball & Beatty*, 71, *and Hall vs. Bumstead*, 20 *Pickering's Rep.* 2, to the same point.

[4.] If the legal title to the two negroes now in controversy, was in the testator, at the time of his death, the same vested in his executors, who alone could have maintained an action for a conversion thereof, and the Statute of Limitations commenced running against them in favor of D. Foley, and those claiming title under him, from the time of the settlement made with D. Foley, if not from the time of the qualification of the executors to execute the testator's will.

The executors were barred by the Statute, and so are the infants, their *cestui que trusts*, also barred by the Statute. If the executors have, by their negligence, injured the interests of their *cestui que trusts*, then their remedy is against them, for the injury sustained in consequence of such negligence. How far the rights of infants to real estate would be protected by the Act of 1817, we express no opinion—we leave that an open question. Our judgment is confined to such cases only, as where the title to the personal property of the testator, or intestate, vests in his legal representative.

Let the judgment of the Court below be affirmed.