No. 82.—THOMAS STOCKS and others, plaintiffs in error, *vs.* VAN LEONARD and others, defendants in error.

[1.] A bill by the creditors of an insolvent corporation, alleging a fraudulent combination and collusion between the *assignee* and *debtors* of the institution, to injure and defeat the creditors, makes a proper case for the interposition of a Court of Equity.

[2.] In Courts of Equity, the Statute of Limitations does not begin to run in cases of *fraud*, until the *discovery* of the fraud.

In Equity, in Muscogee Superior Court. Decision on demurrer by Judge ALEXANDER, May Term, 1850.

The bill in this case was filed by Thomas Stocks and others, as judgment creditors of the Chattahoochee Rail Road & Banking Company, showing that they had prosecuted their legal remedy till a return of *"nulla bona"* had been made by the Sheriff; that the said company, being in failing circumstances, made an assignment of all its assets to Van Leonard and others, as general assignees, for the benefit of the creditors of the bank; that the assignees accepted the trust, and received property amounting to

$250,000; that, instead of collecting and appropriating them to the creditors of the bank, the assignees colluded and combined with the debtors of the bank, and allowed them to purchase the bills at a great discount, as low as 5 cents in the dollar, and with them pay off their liabilities to the bank; that the assignees had collected a small portion of the assets and appropriated them to their own. use; that when called on by complainants to account for the manner in which they had discharged their trust, they refused to furnish any explanation or information, alleging that they had been advised by counsel not to do so, as it would furnish information upon which a suit might be instituted; the bill prayed for an account and decree.

By an amendment, the names of several debtors were included, who had fraudulently combined with the assignees to pay off their debts with the depreciated bills of the bank, and a decree was prayed, that they should pay the amount of their debts into Court, with interest thereon.

By a subsequent amendment, it was alleged, that the fraud charged in the bill came to the knowledge of complainants in the year 1848.

Hampton S. Smith and three other debtors of the bank, made defendants to the bill, demurred thereto for want of equity.

The Court sustained the demurrer, and dismissed the bill as to the defendants demurring, and this decision is assigned as error.

W. DOUGHERTY, for plaintiffs in error.

H. HOLT, for defendants.

*By the Court.*—LUMPKIN, J. delivering the opinion.

This was a bill filed by Thomas Stocks for himself and in behalf of all the creditors of the Chattahoochee Rail Road & Banking Company of Georgia. It alleges, that in July 1841, the complainant held and owned the notes and bills of said corporation, amounting in all to $580; that he instituted suits and obtained judgments for the same, upon which executions were issued on the 14th day of January, 1842; that the corporation being insolvent, a return of "*no property to be found*" was made thereon by

the proper officer, on the 18th day of April of the same year. The bill further charges, that the corporation being in failing circumstances, and desirous to discharge its liabilities equally and according to the principles of justice, without giving or showing a preference to any creditor over another, but to pay all alike, as far as the assets would enable them to do so, on the 17th day of July, 1841, transferred and assigned to Van Leonard, John Bethune and William P. Yonge, all of their real and personal estate, notes, bills of exchange, accounts and every other evidence of debt and species of property belonging to said corporation, in trust, for the creditors and stockholders. It alleges that the trust was duly accepted and the assignment placed upon the records, and that the said trustees might and ought to have realized and collected the sum of $250,000, or other large amount, from said assets, *but that colluding and confederating with the debtors of the corporation, and for the purpose of injuring and defrauding the complainant and the other creditors, and to prevent them from collecting their debts, wholly and totally neglected and refused to collect a large portion of the corporation debts which were assigned to them, or to take any steps for that purpose, and that they permitted others to settle their debts in such a manner as they thought proper, by purchasing up, after the assignment was executed, the bills and debts of the corporation at a very great discount, as low as five cents on the dollar, and exchange the same for their own debts, and thus substituting those so purchased for the debts assigned as aforesaid, for the benefit of the complainant and the other creditors of the corporation.* The bill further charges, that the trustees collected some of the debts transferred to them, in good current funds, and applied them to their own use, and had wholly failed and refused to pay over to the complainant and the other creditors, any part or portion of the proceeds of said assets, property and effects in the assignment, and that when called upon to explain and account for the manner in which they had executed the trust, they refused to furnish any explanation thereof, or to give any information touching the same, assigning as a reason, that they had been advised by their counsel not to do so, as it would furnish matter upon which suit might be instituted.

By leave of the Court, several amendments, at sundry times, were made to the bill, in one of which it is stated, that application was made in the Spring of 1846, by William Dougherty, as

the attorney of the creditors, to William P. Yonge, one of the assignees, for an account and exhibition of his actings and doings as such, and for an inspection of the corporation books. Yonge admitted that he had the books, but refused to show them, under, as he alleged, the professional instruction of his attorneys; and the complainant assigns this as his reason and excuse for not knowing, because he had no means of knowing, until the answers of the assignees were filed, of the frauds and collusion charged in the bill, nor of the manner in which the debtors of the corporation settled with the assignees, which was in November, 1848, or about that time. The prayer of the bill is for an account of the trust fund and a settlement of the creditors' claims—the appointment of a receiver, &c.

To the bill, a general demurrer was filed, for want of equity, on the 10th of June last, by a portion of the defendants, namely : Hampton S. Smith, Harper & Holmes, Geo. W. B. Towns and William W. Garrard. There was also a plea of the Statute of Limitations interposed at the same time, and William W. Garrard insisted on his discharge in bankruptcy.

On the 20th of June, the cause coming up for argument, the solicitor for the complainant moved the Court to strike said demurrer and pleas from the record, on the ground that they were not filed at the proper time. As a reason and excuse for the delay, the defendants, by their solicitor, showed that the usual rule had not been taken in the case ; and that the Court, at the November Term, 1849, did not sit but a few days, in consequence of the indisposition of the Judge, and was adjourned over to the Spring Term. The Court overruled the motion to dismiss the demurrer and pleas, and the solicitor for the complainant excepted.

The Court then proceeded to consider the demurrer, and after argument had thereon, sustained the demurrer and dismissed the bill ; and to this decision, counsel for the complainant excepted, and now assigns the same as error.

Preferring, as we do, to have questions of practice determined by a full Court, we shall pass over the first exception taken in the Court below, especially as the adjudication of it is rendered unnecessary, for the present at least, by the view which we have taken of this case.

[1.] The only question, then, for the consideration of this Court

is, was there equity in the complainants' bill? The record does not disclose the grounds, and I am, I confess, at a loss to conceive how the Chancellor came to make a decree of the dismissal of the bill for want of equity. Some two or three hundred thousand dollars worth of property transferred by an insolvent corporation to assignees, for the payment of its debts nine years ago—no account rendered—all accounting refused when called for—the trustees charged with having received a portion of the funds and appropriating them to their own use—with failing and refusing to collect a large amount of the trust debts, or to take any steps for that purpose, and fraudulently combining and colluding with the debtors of the institution to settle their debts in such a way as would defeat the creditors! I must say, that were I to draw on my fancy, instead of the facts charged in the bill *and admitted by the demurrer to be true,* to frame a case which would address itself with peculiar force to the consideration of a Court of Equity, I should find it difficult to state it more strongly.

So far as the demurrants, who were the debtors of the corporation, are concerned, their liability is that of persons who deal with others holding a fiduciary character, and collude with them in violation of their trust. All such are deemed in equity *participes fraudis;* the trust is forced upon them, and they are compelled to perform it in the same manner as the trustee himself. The same doctrine is applied to them which governs the cases of executors and administrators, confederating with the debtors of the estate, either to retain or waste the assets. In such cases, the creditors will be allowed to sue the debtors directly in Equity, making the representative also a party to the bill, although, ordinarily, the executor or administrator only can sue for the debts due the deceased. *Gilbert vs. Thomas et al.* 3 *Kelly,* 575, *and authorities there cited. Worthey et al. vs. Johnson et al.* 8 *Ga. Rep.* 239.

[2.] As to the plea of the Statute of Limitations, it has become the settled rule of this Court, that in cases of *fraud* it does not begin to run until the party who is entitled to sue discovers the fact. *Conyers vs. Kenan & Hand,* 4 *Kelly,* 308. 8 *Ga. Rep.* 1. *Ibid,* 97. Here it is alleged in the amended bill, that the complainant did not acquire a knowledge of the transactions, upon which he seeks a recovery, until November, 1848, or about that time.

The judgment of the Court below must, therefore, be reversed, and the cause remanded for further proceedings.