## ANDERSON v. GAILEY et al.

District Court, N. D. Georgia, Atlanta Division. July 2, 1929.

No. 481.

Robert M. Tuck, of Covington, Ga., and Smith, Hammond & Smith and W. L. Bryan, all of Atlanta, Ga., for plaintiff.

Spalding, MacDougald & Sibley, of Atlanta, Ga., Clarence Vaughn, of Conyers, Ga., Watkins, Asbill & Watkins, of Atlanta, Ga., J. H. McCalla and J. R. Irwin, both of Conyers, Ga., and Lamar C. Rucker, of Athens, Ga., for defendants.

SIBLEY, District Judge. ■■■ A national banking association failed and a receiver was appointed April 17, 1925. On December 8, 1927, he filed suit in equity as for an accounting against eight of the directors seeking recovery in behalf of the association, its stockholders and creditors, under the common law and under 12 U. S. Code, § 93 (12 USCA § 93), for numerous acts and negligences from 1919 to 1925, especially in making loans contrary to 12 U. S. Code, § 84 (12 USCA § 84), and in negligently handling these and others to the loss of the bank. Motions are made to strike various portions of the petition as barred by the statute of limitations. The Georgia law applies, and four years from the accrual of the cause of action is the limitation period. Anderson v. Anderson (D. C.) 23 F.(2d) 331, affirmed Anderson v. Pennington (C. C. A.) 28 F. (2d) 1007. Each misconduct is a separate cause of action against those who participated. In the case of excess loans the right of action accrues so soon as the loan is made and the bank parts with its money.

■■■ It has no right to receive the paper, and if it is left among the assets of the bank by the directors it is only in the nature of "salvage." Corsicana National Bank v. Johnson, 251 U. S. 68, 86, 87, 40 S. Ct. 82, 64 L. Ed. 141. In the handling of the salvage they owe due diligence, as in handling all the bank's business. Their acts of clear misconduct, as in making a loan to an insolvent or buying and not properly reselling the bank's own stock, also give rise immediately to a cause of action, though the extent of the damage may not at once be apparent. But some neglects are not actionable until some damage actually ensues, and as to these the stat-

ute cannot begin to run until there is a right to sue. 25 Cyc. 1116, 1136. In most instances of the latter sort, complete insolvency and loss of the asset is placed in this petition at a date so early as that some of the directors who came into office since cannot have contributed to the loss by their neglect, and as to others previously in office limitation has clearly run, unless prevented by some exception.

1. That the forum is in equity makes no difference. Items of an account barred at law are barred in equity. The causes of action here are really torts and equity will not enforce them if barred at law. Hays v. Urquhart, 63 Ga. 324; 25 Cyc. 1057, 1060.

2. Directors as respects their corporation and its stockholders are not technical trustees in whose favor limitation does not run at all during the continuance of their trust. Their relationship is fiduciary, and trust doctrines are sometimes applied to effectuate equities as respects rights in property; but as respects liability for misconduct and limitation of action therefor they are more exactly agents or mandataries. Briggs v. Spaulding, 141 U. S. 132, 11 S. Ct. 924, 35 L. Ed. 662; 10 Cyc. 758. It cannot be said generally that a director has no protection by the statute of limitations so long as he continues in office.

3. But it is claimed to be otherwise when, as here, the directors sued constitute a majority of the board and dominate it. In so far as any special right of action in stockholders or creditors under 12 U. S. Code, § 93, or otherwise may be involved there is no ground for the contention. Nothing stood in the way of their suing at any time. In so far as the right of the corporation itself to sue is concerned there is more reason for the contention, as the managing directors would be the persons sued. Where suit is a legal impossibility, judicial exceptions to the statute are implied, as where there is no competent plaintiff or defendant or no forum to sue in. Otherwise not. Weaver v. Davis, 2 Ga. App. 455, 58 S. E. 786.

In none of the cases here complained of do all the directors in office at the time seem to have been involved. There are several directors who are not claimed to have been involved in any of them. In considering in a directors' meeting suit by the corporation for any act, the proposed defendants would be disqualified to vote. 10 Cyc. 790. If the qualified directors were not a quorum, the matter might have been referred to the stockholders and other directors elected, or direct action taken by themselves. After ex-

hausting corporate remedies, a single director or stockholder could have asserted the corporation's right in court. · Colquitt v. Howard, 11 Ga. 556; Ex parte Chetwood, 165 U. S. 443, 457, 17 S. Ct. 385, 41 L. Ed. 782; Herrmann v. Edwards, 238 U. S. 107, 35 S. Ct. 839, 59 L. Ed. 1224; Huff v. Union Nat. Bank (C. C.) 173 F. 333, and other cases collected in 12 U. S. Code Anno. under section 93, at page 234.

Whether the conduct of the majority is wise and diligent under all the circumstances, or wrongful, is often a close question, and controversy over it needs the quieting of limitation as much as any other controversy. Without it business men would hesitate to become bank directors. Adams v. Clarke (C. C. A.) 22 F.(2d) 957, involved the entire board. I do not think the rule can be established that no limitation begins to run so long as the majority continue in control, provided there is no fraudulent concealment of the cause of action, and provided the cause of action is not itself a fraud. Curtis v. Connly, 257 U. S. 260, 42 S. Ct. 100, 66 L. Ed. 222.

4. Where the cause of action is itself a fraud cognizable in equity, the general rule is that limitation begins to run only when the fraud is discovered, or could by ordinary diligence have been discovered, by the complainant. 25 Cyc. 1173. The more rigid rule of the law courts that the statute runs from the commission of the fraud, though undiscovered (25 Cyc. 1180; Pendergrast v. Foley, 8 Ga. 1), is not of force in Georgia because of the statute passed in 1856 (Civ. Code 1910, § 4380): "If the defendant, or those under whom he claims, has been guilty of a fraud by which the plaintiff has been debarred or deterred from his action, the period of limitation shall run only from the time of the discovery of the fraud." This statute has been considered applicable where legal relief because of fraud was sought, Kirkley v. Sharp, 98 Ga. 484, 25 S. E. 562; and also equitable, Short v. Mathis, 107 Ga. 807, 33 S. E. 694. It applies, also, where the cause of action was not an original fraud, but where its existence was fraudulently concealed. The fraud in the latter instance must be an actual moral fraud, and not a mere constructive one. Anderson v. Foster, 112 Ga. 270, 37 S. E. 426; Maxwell v. Walsh, 117 Ga. 467, 43 S. E. 704. The statute doubtless has the same meaning when fraud is the cause of action. The difference between express trusts and those constructed by a court of equity as regards the statute of limitations was well established before the Act of 1856

was passed, Keaton v. Greenwood, 8 Ga. 97. I have observed, in these pleadings of more than 400 pages, no cause of action that could be said to be based in actual corrupt fraud. Limitation could be tolled, therefore, only by a morally fraudulent concealment which deterred the persons entitled to sue from acting. The only concealment averred seems to be carrying loans as good which were known to be bad. This, however, was well known to the bank examiners and Comptroller of the Currency, and severely criticized by the latter long before the limitation period. Any one examining the books and seeing these debts renewed, without reduction, for years, would have suspected something was wrong, especially in the financially troublous times which prevailed during 1920 to 1926 in Georgia. · Any inquiry would have disclosed the truth. All the cases require diligence of the plaintiff in discovering the right of suit. It is true the directors, although strangers to the bank's creditors, were in a confidential relationship to the bank and its stockholders, and would be held to strict good faith and most full disclosure in dealings between them and the bank or its stockholders (Oliver v. Oliver, 118 Ga. 362, 45 S. E. 232), and this same relationship of confidence modifies the diligence required of the bank or stockholders in detecting or discovering a fraud, as was recognized in the Georgia cases cited above.

It would, however, be difficult to conclude, unless in respect of loans in which the directors concerned were themselves interested, that there was any duty of special disclosure beyond making truthful minutes and entering the transaction on the records of the bank. The failure to do more was not a fraud or concealment. Surely it is not the duty of a director, whenever he concurs .in a questionable act of the board, to specially notify each absent director and stockholder, all of whom have full access to the bank's records. Few banks could survive such handling of their affairs in a critical time. The position of a director in this regard is no more confidential than that of an attorney at law or other agent. The cases have been strict in requiring diligence and the use of all available records and reliable sources of information by the principal, and have 'uniformly held that mere silence is not a fraudulent concealment, sometimes even of a misappropriation of funds, nor are verbal false assurances to be relied on when other sources of information are at hand. Sutton v. Dye, 60 Ga. 449, Marler v. Simmons, 81 Ga. 611, 8 S. E. 190.

Where unskillfulness and neglect in an agent is the cause of action, the unskillful act itself sets the statute in motion, and not the occurrence of the special damage, and ignorance of it by the plaintiff is not important. Crawford v. Gaulden, 33 Ga. 174; Lilly v. Boyd, 72 Ga. 83; Gould v. Palmer, 96 Ga. 798, 22 S. E. 583; McCaren v. Williams, 132 Ga. 353, 64 S. E. 65. The general question of fraud as a reply to limitation and of the diligence required to guard against it, and the pleading and proof required for success were authoritatively examined in Wood v. Carpenter, 101 U. S. 135, 25 L. Ed. 807, with respect to an Indiana statute similar to that of Georgia, and with respect to the general principles of law and equity, and these results were declared: "Concealment by mere silence is not enough. There must be some trick or contrivance intended to exclude suspicion and prevent inquiry. There must be reasonable diligence; and the means of knowledge are the same thing in effect as knowledge itself. The circumstances of the discovery must be fully stated and proved, and the delay which has occurred must be shown to be consistent with the requisite diligence."

The ruling in American National Bank v. Fidelity Co., 131 Ga. 854, 63 S. E. 622, 21 L. R. A. (N. S.) 962, is cited as at variance with what has been stated above. The headnote summary is not altogether supported by the opinion, and is not in accord with the older decisions stated above, which, however, were not considered and overruled. Under Georgia law unless this is done the older decisions prevail. Moreover the later decision was not unanimous. The case ought, however, to be distinguished on the concluding sentences of the opinion, wherein stress is laid on the allegations of the petition that the concealment was with fraudulent intent and involved moral turpitude.

I conclude that the alleged acts of making excess loans or loans insolvent when made more than four years before suit was brought are barred. So, also, are such acts of renewal in cases where it is alleged the debt was already insolvent when renewed. The renewal lost nobody anything, even if negligent. No fraud or fraudulent concealment appears in these, and failure to use diligence to discover and enforce liability does appear. To be excepted from this ruling are those cases, if any, in which certain directors are alleged to have been beneficially interested in the loans. These, being dealings with their corporation to their own advantage, ought to be more closely looked into,

and are retained for trial, as are the transactions within four years from the filing of the suit, including the continuing negligence in failing to resell the bank's own stock so long as it was salable without committing a fraud on the purchaser.

An order may be presented, applying these rulings to the pleadings in the case.