### IN THE

## SUPREME COURT OF THE STATE OF GEORGIA,

# AT MACON,

## FEBRUARY TERM, 1854.

Present—JOSEPH H. LUMPKIN,
EBENEZER STARNES, } Judges.
HENRY L. BENNING.

---

No. 1.—LEWIS BISHOP, surviving partner, plaintiff in error,
vs. DANIEL SANFORD, administrator, defendant in error.

[1.] An action of assumpsit upon a foreign judgment, is barred, in our State, by virtue of the second section of the Act of December 7th, 1805, passed for the limitation of actions, if not brought until five years have elapsed, from the time the judgment was obtained.

[2.] If such action of assumpsit upon a foreign judgment, be not barred by the second section of this Act, it is barred by virtue of the fourth section; or, if that be repealed by the fifth section of the Act of 1767, if suit be not brought within four years from the time the judgment was obtained.

[3.] As the Statute of Limitations is " one passed for quieting men's estates," Courts do not now apply a forced construction, which, by bringing a party within an exception, may enable him to evade the force of the Statute; hence, a defendant residing beyond the limits of the State, is not within the exceptions to the Statute of December 7th, 1805.

Assumpsit on Foreign Judgment. Decision on Statute of

Limitations, in Monroe Superior Court, made by Judge STARK, August Term, 1853.

This was an action of assumpsit, brought by Lewis Bishop,. as surviving partner of Bishop & McCann, against Daniel Sanford, as administrator of David S. Walker, on a judgment for $110, rendered in the Circuit Court of Talladega county, State of Alabama, on the 10th day of December, 1838. The defendant pleaded the Statute of Limitations.

The following statement of facts was agreed upon, and submitted to the Court below, by counsel for the parties:

"That Walker never resided in the State of Georgia, after the rendition of said judgment, nor owned any property therein, until an interest vested in him, in the estate of John T. Dunn, who died in Monroe county, Georgia, in the year 1847. That said Walker died in the State of Alabama, in the year 1848; that Daniel Sanford obtained letters of administration on the estate of Walker, from the Court of Ordinary of Monroe county, Georgia, in the year 1850; and that the plaintiff commenced his suit against said Sanford, as administrator aforesaid, on said judgment, returnable to the September Term of the Superior Court, of said county of Monroe, 1851".

The Court sustained the plea of the Statute of Limitations. To which decision, counsel for plaintiff excepted.

McDONALD & CABINESS, for plaintiff in error.

NESBITT & HARMAN, for defendant in error.

*By the Court.*—STARNES, J., delivering the opinion.

The 2d section of an Act of our General Assembly, passed in the year 1805, provides, that "All actions of trespass, detinue and trover, all actions of debt, whether upon specialty, or simple contract, &c., &c., shall be commenced and sued within the time and limitation hereinafter expressed, and not afterward; that is to say, the said actions of trespass, &c.,

within one year after the cause of such action or suit, hath accrued, and not after.   And the said actions of detinue, trover, debt, (other than upon judgments,) within four years next, after the cause of such actions or suits have accrued, and not after; and the said actions of debt, upon judgments obtained in Courts, other than the Courts of this State, within five years next, after the judgment shall have been obtained, and not after".   And this Act, so far as actions upon foreign judgments are concerned, has not been repealed.

It is now, in this case, insisted that inasmuch as no mention is made in this Act, of any other form of action brought upon a foreign judgement than the action of *debt*, that the present action of *assumpsit*, upon this foreign judgment, is not barred by the time which has elapsed since the judgment was obtained.

[1.] In the first place, I think this position is not correct, because a reasonable construction of this Act seems to constrain the conclusion, that the Legislature intended to bar the right to sue upon a foreign judgment, after five years had elapsed from its date; and therefore, that it designed to embrace the action of *assumpsit* in the terms employed.   The words, "actions of debt", in this point of view, are used generically, as it were, and not technically.

The Statute is loosely and inaccurately worded.   Indeed, this may be said of all our principal Statutes of Limitation. The most important of all—our Act of 1767—it is known, is very similar to the Statute of 21 *Jac.* 1 *ch.* 16; and this latter Statute, it has been often said, was "unfortunately worded very loosely".   (*Inglis vs. Haigh*, 8 *Mees. & W.* 779.   *Angel on Lim.* 74.)   It is, on this account, entirely proper, that in construing these Statutes, which are now regarded as highly beneficial, and while endeavoring to enforce them, in the spirit of the legislation which called them into existence, and to prevent evasion of them, Courts should not confine construction to the letter of the Statute; but if the intention of the law-maker can be gathered from the whole frame of the Act,

although contrary to the technical signification of words used, effect should be given to such intention.

On looking to the whole of this Act of 1805, as to the matter of a suit upon a foreign judgment, and considering that its scope and purpose was (as the Supreme Court of the U. S. have said, when referring to the same Act, *McElmoyle vs. Cohen*, 13 *Pet.* 312,) to establish a policy for the State, in this regard, I cannot believe otherwise, than that the Legislature designed to make the Act a bar to every form of action which might be brought upon a foreign judgment. And I am not prepared to hold, that it was intended to bar the cause of action, after the lapse of five years from the date of the judgment, when one form of action was employed, and to preserve it when another was adopted. I cannot see a reason for this, and think that such a provision would have been but legislative mockery.

Nor do I believe that the technical tenor of the words, "said actions of debt", &c., are of such inflexible significance, that it is absolutely necessary to adhere to the letter, and hold, that *debt* is the only form of action which should be considered as contemplated in their use. I prefer to regard these words as employed to express those actions which were commonly brought upon simple contracts.

It seems to me, that a different view, unless it be that the action of assumpsit is barred in four years from the judgment, inevitably involves the Legislature in the predicament of intending to bar suits upon foreign judgments, after five years should have elapsed from their date, and yet, so fashioning its legislation, as to defeat its own purpose.

It was when impressed by similar considerations, that Courts have held, that the action of *assumpsit*, though not *eo nomine*, mentioned in the Statute of *James*, was yet within its terms, (indeed, it is only by a similar process of construction, that it is brought within our Statute of 1767); and hence, we find the Court of Common Pleas, in England, in the case of *Crosier vs. Thompson*, (2 *Mod.* 71,) where the question was, whether or not the action of *assumpsit* was within the equity of the

saving clause of the Act of *James*, though named, (or rather *construed* to be named,) in the limiting clause alone, deciding, "That upon the whole frame of the Act, it was strong against the defendant, for it would be very strange that the plaintiff might bring an action of *debt*, and not of *indebitatus assumpsit*". The Court further adds, "and this action being within the same reason with other actions therein mentioned, ought also to be within the same remedy".

To the same effect, is the case of *Chandler vs. Villett*, (2 *Saund*. 120.) So, also, in the late case of *Inglis vs. Haigh*, (8 *Mees. & W.* 769,) when considering, whether or not, the exception in the Statute, as to merchants' accounts, applies to an action of *assumpsit*, it was held by the Court of Exchequer, "That the exception clearly would not apply to an action of *debt*, brought for the same demand; and it is difficult to believe that the Legislature could have intended to preserve the right in one form of action, but to bar it in another.

I suggest, in this connection, that the form of a declaration, in an action of *assumpsit*, and in an action of *debt*, on simple contract, are very similar—the principle difference being that one is founded on the promise, and the other on the contract; and by an examination of the records in our Superior Courts, about, and previous to the year 1805, it will be found, that the actions brought upon simple contracts, generally, were entitled either *debt*, or *action on the case;* and that in some parts of our State, certainly, the forms peculiar to actions of *debt*, and of *assumpsit*, were frequently very much mingled in the same petition.

*Debt* was formerly, in the language of Lord Ch. Jus. *Vaughn*, "the natural and genuine action upon a simple contract"; and *assumpsit* was adopted afterwards, as an expedient, to avoid the wager of law, which might be pleaded to the action of *debt*. (*Wilk. on Lim.* 6.) This privilege, by which the defendant might wage his law, has long been obsolete, and perhaps never was of force in Georgia; and there was, on this account, therefore, no occasion to resort to the action of *assump-*

*sit*, or to be very particular or careful in framing the form of the action, or distinguishing between *debt* and *assumpsit*.

In view of these things, I can readily see how our legislators, in 1805, may have overlooked the difference between these actions, and have considered *assumpsit* as embraced in the general terms used. In opposition to the view which has been presented, it is urged that it is no uncommon thing to find that one form of action is barred by the Statute, and when another, on the same cause of action, is not; and for illustration, reference is made to the *writ of right*, which might be brought to recover lands, tenements, &c., within sixty years after right of entry, whilst the action of *ejectment* would be barred, in England, in twenty years.

It should be borne in mind, that we are here searching for the intention of the Legislature, in passing *one* Act, viz: the Act of 1805, and are endeavoring to ascertain what action that body designed to embrace in the terms' of that Act, to which reference has been made; for I think no instance can be found, where, in the *same* Act, the law-making power intended to preserve a remedy, when one form of action was brought, and to bar it when another was adopted. Unless such instance can be found, the illustration taken, proves nothing; for the limitation, as to the *writ of right,* was created by the Statute of 32 *Henry*, 8 *ch.* 2, and that as to *ejectment* by the 21 *Jac;* and thus is presented the action of different legislative bodies, at different times.

But aside from this, the *writ of right* cannot, with accuracy, be said to have been framed for the same cause of action, with the action of *ejectment*. The former, which is one of the vestiges of the feudal system, lay for the *mere right*—the latter was a possessory action only, used now, it is true, for the purpose of trying title, but in its nature and origin, a possessory action; and the judgment on the former, for the reason that it was a trial of the right, has always been held final and conclusive between the parties, whilst on the latter, it determined only the right of present possession.

In these distinctions may be found, no doubt, the reason for

the difference in the application to these forms of action of the Statute of Limitations, by the English Courts. And if similar illustrations to that contained in this reference can be found, in the application of the Statute to other forms of action, I think there will be, at the same time found, some such essential difference in the right, or cause of action.

For these reasons, I am of opinion that the action of *assumpsit* may be fairly included in the terms of the section upon which I have commented.

[2.] But if I be wrong in the view just taken; and the action of *assumpsit* is not to be regarded as within the terms of of the 2d section of the Act of 1805, still, I am well satisfied that the Statute of Limitations bars this action.

It is conceded, that the Legislature never intended that the action of *assumpsit*, brought upon a foreign judgment, should be without the Statute; and it is admitted that the Statute, by virtue of the 4th section of the Act of 1805, which declares, "That all actions therein enumerated, (among which, *assumpsit*, by construction, is placed,) shall be commenced and sued within four years after the cause of action shall have accrued, and not after"; or, by virtue of similar terms, in our Act of 1767, runs against this action of *assumpsit*. But it is contended, that though running against the action of *debt*, on a foreign judgment from the time the judgment is obtained; yet, that, owing to the peculiar phraseology of the Statute, as applicable to actions of *assumpsit*, that action is limited only from the time when the cause of action accrues in the State of Georgia, by the presence of the defendant in the State.

With regard to this phraseology, it will be remarked, that the terms of this section of the Act of 1805, are similar to those of the Act of *James*, and to our Statute of 1767. Let us, then, ascertain the value of these words, as they are found in the Statute of *James*, and see whether or not, they may be relied upon as taking a case out of the Statute, because the defendant has been out of the realm, or State, from the time the action accrued.

In the case of *Aubrey vs. Fortescue*, (10 *Mod.* 206,) I find

it laid down by *Bridgman* Ch. Jus., "that the Statute is general, and must work upon all cases not exempted by the exception". In the early case of *Prideaux vs. Webber*, (1 *Levinz* 31,) upon the exception, as to infants, it is observed that "the Statute being general, infants would have been bound; if they had not been expressly excepted". In the case of *Chevely vs. Bond*, (1 *Show.* 98,) "The defendant pleaded the Statute, and the plaintiff replied, that the defendant was all that time out of the realm, the replication was adjudged ill". In the case of *Beckford et al. vs. Wade*, (17 *Ves.* 93,) the Master of the Rolls, (who was Sir *Wm. Grant*,) observing, on a case where defendants were "absent out of the realm before the Statute of Queen *Anne*", remarks, that "It was in vain attempted, upon general reasoning, in many cases, to introduce an exception in favor of the plaintiff, in a case where the defendant was out of the realm; a most reasonable exception, undoubtedly, but which the Statute has not made. A plaintiff out of the realm may prosecute a suit by attorney, but when the defendant is out of the realm, it is very hard to call upon the plaintiff to institute a suit, which, in most cases, must be wholly without fruit; yet, until the Statute of Queen *Anne* was made, that case formed no exception, and the Statute of Limitations barred the action". In the same case, the learned Judge, commenting on a Statute of Limitations for the Island of Jamaica, says : "Here is a Statute which contains no exception in favor of absentees—we are, therefore, of opinion that it is impossible, by construction, to introduce that exception into the law".

On this subject, Mr. *Angel*, in his Treatise, says, that "The received construction in England, was that the exception in the Statute of *James*, in respect to persons 'beyond seas', extended only to the case where creditors were beyond sea, and not where the debtors were. But by the 19 *Sec.* 4 *Anne*, *ch.* 16, it is enacted, that if any person, against whom any action lies, for seaman's wages, trespass, &c., or such other actions as are mentioned in the third section of the Statute of James, be beyond sea at the time such action accrued, the plaintiff shall be

at liberty to bring his action against him within the same time after his return, as is limited for such action by the Statute of *James*", &c. And the author adds, that " until this Statute, such a case in England formed no exception". (*Ang. on Lim.* 215.)

It will be observed, that the cause of action is here contemplated as *accruing* while the defendant is out of the realm, and the Statute as running against the plaintiff, before the Statute of *Anne*.

But the case of *Douglass vs. Forrest,* (7 *Bing.* 686,) is cited as supporting a contrary doctrine. It is true, that in this case, Ch. Jus. *Best* says, that "no one has a complete cause of action, until there is somebody he can sue"; and also, that "cause of action is the right to prosecute an action with effect", &c. This declaration, however, let it be remembered, was made in England, where the Statute of *Anne* was of force ; and in the light of that Statute, was perfectly correct  But without that Statute, it seems from the decisions and opinions which I have cited, entirely certain, that in England, absence of the defendant out of the realm, would form no exception to the Statute of Limitations, and the cause of action would be considered as having accrued against him.

Now, the Statute of *Anne* is confessedly not of force in our State ; and none of our Statutes create or recognize such disability as that provided for in this Statute of *Anne.* If, therefore, before the Statute of *Anne*, in England, the cause of action would have accrued to the plaintiff, and the Statute of *James* have commenced to run, notwithstanding the absence of the defendant, it would seem, by analogy, rigidly true, that in our State, where the terms of the Statute are similar, as I have shown, the cause of action accrues, although the defendant be absent from the State. And that this might be held to be true, in all cases of such absence of the defendant, arising under any of our Statutes of Limitations.

But I care not to insist on this last conclusion. I am satisfied to put the decision of this point upon the ground, that we

are here called upon, by construction, to introduce an exception into the fourth section of the Act of 1805, or, (if that be regarded as repealed,) into the fifth section of the Act of 1767, which is similar in terms, and that whilst considering the propriety of this, we must look to other parts of the Act of 1805, and especially to the second section thereof; and finding there, as we do, the provision, as to the action of *debt* upon foreign judgments, on which I have commented, I feel it my duty to take these two features of the law together, to harmonize them, if it be possible, to avoid incongruous conclusions, and to maintain a symmetrical system of legislation, if it can be done. To do this, I believe it necessary, in full consideration of the Act of 1805, to adopt the course of reasoning which I have presented, and for the purposes of this case, to reject a construction which would authorize the conclusion, that the cause of action did not accrue to the plaintiff until the defendant, constructively, by his property, came into the State ; and to hold, that, under the facts submitted, if the cause of action was not barred by the terms of the second section of the Act of 1805, in five years after the judgment was obtained, it was barred in four years thereafter, by virtue of the fourth section of said Act, or by the fifth section of the Act of 1767.

[3.] Entertaining the opinions which I have expressed. and feeling that they may make a case of some hardship to the plaintiff, I would gladly bring his case within the exception contained in the third section of the Act of 1805, if I could do so, consistently with those rules which I regard as controlling such a question. But the case of a defendant residing in another State when the cause of action accrues, and so remaining until the period limited by the Statute has elapsed, though admitted to be within the reason and spirit of the exception, is not within its terms, nor indeed, within the terms of the exceptions, in either of our other Acts of Limitation, and cannot be placed there without a forced construction.

The exception contained in this Act of 1805, is where the defendant " shall remove his property without the limits of

the State, or absconds, or conceals himself, so that his creditors cannot commence an action", &c. Nothing is said, directly or indirectly, of a defendant who resides without the State.

I regard it as a well settled rule, that so far as exceptions to the Statute are concerned, and consequent evasions thereof, "a construction derived from its reason and spirit should never be resorted to, but where the expressions are so ambiguous as to render such mode of interpretation unavoidable". (*Fisher vs. Harnden, Paine C. Ct. R.* 61.)

Mr. *Angel*, in his Treatise, says, that "The views generally —indeed, invariably entertained by our State Courts of the present day, are responsive to the above". (*Ang. on Lim.* 21.)

In the case of *Perry et al. vs. Jackson et al.*, (4 *T. R.* 517,) the Court declares, "that that Statute (21 *Jac.* 1,) having always been considered as a beneficial Law for the public, we ought not to extend the exceptions in it, to a case which does not require it". In the case of *Sucia vs. DeGrapp*, (1 *Cow.* 356,) where the plaintiff had replied to a plea of the Statute, that the defendant had been discharged under an Insolvent Act, and therefore that the case came within the equity of the exception, (in the N. Y. Statute,) as to defendants, who were absent from the State, it was decided, "that it is not for the Court to extend the law to all cases coming within the reason of it, (the Statute,) so long as they are not within the letter".

The Supreme Court of the U. S., too, have said, in the case of *McClung vs. Silliman*, (3 *Pet.* 270,) that "the Courts do not now, unless compelled by the force of former decisions, give a strained construction, to evade the force of these Statutes".

And all this is placed upon the distinct and reasonable ground, that the Statute of Limitations is now construed as one passed "for quieting men's estates, and avoiding of suits".

Impressed with these views, I do not feel authorized, by a forced construction, to aid this plaintiff in evading this beneficial Statute.

Bishop *vs.* Sanford, adm'r.

LUMPKIN, J.—concurring.

Not having the original bill of exceptions, and transcript of the record, in this case before me ; and not having been furnished by the Reporter, with a statement of the facts, I shall proceed to discharge the duty imposed upon me, by the Act organizing this Court, in cases of *dissent*, as briefly as possible.

The facts of this case, as I understand them, are these: Lewis Bishop, as surviving partner, &c. obtained judgment, in the Circuit Court of Talladega county, Alabama, against David S. Walker, bearing date the 10th of December, 1838. The defendant was, at that time, and continued so till his death, a citizen of Alabama. Nor did he ever, after that time, reside in Georgia, or own property in that State, until the year 1847, when, upon the death of John T. Dunn, of Monroe county, in that year, an interest in the estate of Dunn vested in Walker, as one of his heirs at law. Walker died in Alabama, in 1848. In 1850, Daniel Sanford, the defendant in error, administered on the estate of Walker, in Monroe county.

The plaintiff commenced suit against Sanford, as administrator of Walker, on the judgment obtained by him against Walker, in Alabama, returnable to the September Term, 1851, of Monroe Superior Court. The defendant filed the plea of the Statute of Limitations, under the Act of 1805, in relation to suits on foreign judgments. And the only question submitted to Judge STARKE was, whether the action was barred. He decided that it was. And the assignment, in this Court is, that the Circuit Court erred in holding that the plaintiff's remedy, in this case, was barred by the Statute of Limitations of 1805, which prescribes five years, *from the date of the judgment*, and not from the accrual of the cause of action, as the time within which suits must be brought, in this State, upon foreign judgments.

Three propositions are maintained by counsel, who except to the decision—

1st. That the Act of 1805, limiting the time within which

suits shall be brought on foreign judgments, has no extra territorial operation; but acts only on the rights and liabilities of. persons subject to the jurisdiction of the Courts of this State.

2dly. That the Statute did not begin to run against the judgment sued on, until there was some person or, property, in this State, liable to the suit on the judgment, and amenable to the process of our Courts;

And 3dly. That although the letter of the Statute might bar the suit, yet, according to the spirit and equity of it, it should not be held to operate as a bar, until the expiration of five years, from the time that suit could be instituted here.

For myself, the only reply I have to make to all of this is, that I feel it to be my duty, honestly to construe the Act of 1805 as the Legislature intended it. And that guided by this rule, the only one which should ever be applied to the interpretation of Statutes, I see no authority for interpolating upon the Statute, the exceptions which are here proposed. The only exception to be found in this Act, is that which is contained in the third section; and it is to this effect: "That when any person shall remove his property without the limits of this State, or absconds, or conceals himself, so that his creditors cannot commence an action, the person so removing his property, or absconding, himself, shall not be entitled to the benefit of this Act, but shall be answerable for any just demand, against him, her or them". (*Cobb's Digest*, 564, 565.)

If I felt at liberty to *add to* the Statute, as I am urged to do, I might find a plausible reason, at least, to bring this case within this exception; for it might be argued, that according to the *spirit* of the Law, the Legislature did not intend the bar to interpose, until there was some one within the State, against whom the action could be commenced.

The State of Georgia, however, in virtue of that sovereignty by which she legislates in all other cases, has seen fit to prescribe five years, *from their date,* as the limit within which suits *must be brought,* on foreign judgments; and I am unwilling to depart from the plain and obvious meaning of the Act, whatever may be my private opinion, as to its true policy or

substantial justice.   I shall be pardoned, I hope, for remarking
that courtesy to our sister States, to say nothing of our Consti-
tutional obligations, would suggest that a longer period be pre-
scribed than that which is contained in this early legislation.
The policy of States, as well as their duty consequent thereon,
change as they grow older, as it respects the Statute of Limi-
tations.   A much shorter bar is demanded, in a new State like
Texas, than would be justified in New York or one of the older
members of the Union.

The Act of 1805 is the only Statute, in this State, that has
ever provided a bar to suits on foreign judgments.   And this
portion of it remains unrepealed, up to the present period.
*Branch Bank of Alabama against Kirkpatrick.*   (5 *Ga. R.*
34.)

And so much importance did the Legislature attach to this
Act, that it was declared that "the different Courts should be
bound thereby, although the same should not be pleaded".

But it is said that the bar of five years, prescribed by this
Act, applies to the *form* of the remedy, to-wit : the *action of
debt*, and not to the *remedy* itself ; and that inasmuch as the
plaintiff has brought *assumpsit* instead of debt, that he is not
barred until four years next after the cause of action accrues ;
and that as the cause of action never does accrue, until there is
some one in the State, capable of being sued, that here the Statute
did not begin to run until a year after the appointment of San-
ford, as administrator of Walker, in Monroe county.

Whether debt be not the ordinary, if not the only remedy,
to enforce the collection of judgments obtained in the Courts
of the other States of the Confederacy, I need not discuss.—
That such was the opinion of the Assembly of 1805, I enter-
tain no doubt ; for even if this judgment from a sister State,
be nothing more than a simple contract debt, which I am not
prepared to admit, still, I would submit that until the forepart
of the 17th century, *debt* was the ordinary, if not the only rem-
edy, in cases of simple contract.   The action of assumpsit did
not come into general use, until *Slade's Case.*   Hence it is,
perhaps, that it was omitted, *by name*, in the early Act of

*James*, which is the foundation of all the Statutes of Limitations, in this and the other States of the Union. It was in consequence of the defendant's right to his trial by wager of law, that assumpsit was substituted for debt, and trover for detinue, it being only in debt on simple contract and detinue, that wager of law was allowed.

I have stated that I was not prepared to admit that a judgment from a sister State, was nothing more than a simple contract. I am aware that *foreign judgments, proper*, belong to this class, and are only held to be *prima facie* evidence of debt. But the judgments of our sister States are distinguishable from foreign judgments in this: that by the first section of the fourth article of the Constitution of the United States, and by the Act of May 26th, 1790, section 1, the judgment of a sister State is a record, conclusive upon the merits, to which full faith and credit shall be given, when authenticated as the Act of Congress has prescribed.

These judgments, then, being debts of record, not examinable upon their merits, and which cannot be avoided but by the plea of *nul tiel record*, differ, most essentially, from judgments obtained in Great Britain or France. It may well have been questioned, therefore, by the lawyers of 1805, whether assumpsit would lie for the enforcement of judgments from sister States. In this form of action, the plaintiff must allege, in his declaration, and show the certain cause of debt for which the defendant promised. But upon a debt of record from S. Carolina or Alabama, this need not be done, when it is sought to carry it into judgment, by suit in the tribunals of this and other States, any more than in a contract under seal, where *assumpsit* never did lie.

But let us examine a little further into this Act of 1805, and see whether the plaintiff can escape the bar which it sets up, by resorting to assumpsit instead of debt. And I would remark, that *assumpsit* is not only omitted by the Act of *James*, but by our Provincial Act of 1767, the Reviewing Statute of 1806, and by every other Statute of Limitations passed in this State. It has been held here, however, as in England, that the words,

" actions upon the case", includes the action of *assumpsit ;* and therefore, it is embraced in the 4th section of the Act of 1805, which is as follows: " All actions upon the case, other than for words, which shall be sued or brought at any time after the passing of this Act, shall be commenced and sued, within four years, next after the cause of such action or suit hath accrued, and not after". (*Cobb's Digest,* 565.)

Now as the Act of 1805 prescribes the same bar to actions on the case, or *in assumpsit,* as that limited by the Act of 1767, namely: four years, I see no reason for holding that this section of the Act of 1805 is repealed by the Reviewing Act of 1806. For this latter Act, after reviewing the Act of 1767, only repeals all other Acts and parts of Acts which militate against it. Neither so much of the 2d section of the Act of 1805, as prescribes the bar *by name,* against foreign judgments, concerning which the Act of 1767 was silent, nor the 4th section, which fixes the limit for actions on the case, or *assumpsit,* are in conflict with the Act of 1767.

But be that as it may, the Legislature of 1805, for the first time, directs its attention to the subject of foreign judgments, and undertakes to say how long the interests of the community it represents, require that its own Courts should be kept open for their recovery. And it is gravely insisted that the result of their deliberations is this : If you bring *debt* on these demands, which, by the way, we think the proper, if not the only remedy, it must be commenced within five years, next after the judgment shall have been obtained, and not after ; and that, too, whether there be any one in the State, who can be sued, or not. In such case, that is if you bring debt, considering that the Statute of Limitations is so beneficial and peaceful, that as in ancient Greece, it should over-rule supervening obstacles—even infancy, non-residence, coverture and insanity. But only bring *assumpsit* on this claim, and you may sue any time within four years, next after the cause of action hath accrued ; that is, after you find somebody in this State, either the defendant or his legal representative, against whom an action can be brought! *Credat Judæus Apella.* For myself, I

cannot impute such absurdity to the "reverend, grave and po-- tent seigniors" who passed the Act of 1805.

Having provided, and as they thought, effectually, a limitation, against foreign judgments, in the second section of the Act, they dismissed that subject from their minds.   Had it intend- ed to be included again in the fourth section, how different would have been its language.   It would have been framed thus : "all actions on the case, (or assumpsit,) other than upon judgments, shall be sued within four years, next after the cause of such action hath accrued; and the said actions on the case (or assumpsit) upon judgments obtained in Courts, other than the Courts of this State, shall be sued within five years, next after the judgment shall have been obtained, and not after".

Four years was the bar applied, by this Statute, to actions of debt, generally, but five to debt on foreign judgments.— Four years was the bar applied to actions on the case, (or as- sumpsit) generally.   Why, I ask, did not consistency suggest the propriety of excepting foreign judgments from the one form of action, as well as the other, and extending the same bar of five years to both.

I know that it has been held *by the Courts,* that upon the same demand, one form of action will be barred, when another will not.   But it remains yet to be shown, that the same Law or the same Legislature, can be characterized by a like piece of folly.   That our law-makers intended to say, that if a de- fendant removes to Georgia, pending the suit in a sister State, and an action is brought here upon the judgment, when ob- tained, that if debt is brought, the bar is five years—if assump- sit, four.

But it has been said that the Act of 1805 was, "unfortu- nately, worded very loosely" and lasted only a year at that.   I reply, that the Act of *James,* and all its progeny, at home and abroad, are chargeable with the like imperfection as is admit- ted by Mr. *Angell,* who, by his Treatise on this head of the Law, has supplied the deficiency of *Ballantine* and all previous authors.   And as to the short duration of the Act of 1805, its

enactment, as to foreign judgments, certainly, if not to the action of assumpsit, also, as was said by Peter on the day of Pentecost, of David's sepulchre, "is with us unto this day".

Finally, I take these propositions to be incontrovertible and conclusive upon this case, especially the latter, namely : that when a Statute of Limitations provides that an action, by its technical denomination, shall be barred, if not brought within a prescribed time, that every *cause* for which such action may be prosecuted, is within the meaning of the Act; and so, also, when a bar is prescribed for a *cause* of action specified in the Statute, that the Statute operates against all actions, regardless of their form, which may be brought upon the *cause* of action specified.

Hence, under this latter rule, five years being prescribed by the Act of 1805, as the limit within which suits must be brought in this State, upon foreign judgments, that bar should operate, no matter what form of action may be resorted to, to enforce the demand, whether debt or assumpsit.   And hence, I concur with my brother STARKE in the Court below, and my brother STARNES in this Court, in holding that the plea of the five year's bar, under the Act of 1805, was a good defence to this suit.

BENNING, J.—dissenting.

The Act of Limitations of 1805, contains this, among other provisions : " and the said actions of debt, upon judgments obtained in Courts other than the Courts of this State, shall be brought within *five* years *next after the judgment* shall have been obtained, and not after".

The plea of the defendant is, that no right of action, in the premises, *had accrued*, in favor of the plaintiff, at any time

Bishop *vs.* Sanford, adm'r.

within five years *next or last, preceding the bringing of the suit.*

This is not a plea of the provision of the Act of 1805, but it was treated by the parties, and therefore considered by the Court, as if it was. The plea was treated and considered as if, instead of saying what it says, it had said, that the *judgment* on which the action was founded, *had not been obtained* at any time within five years next, before the commencement of the suit.

Thus treated and considered, the plea was held, by this Court, to be a good plea of the aforesaid provision of the Act of 1805, and to be a bar to the action. From the latter part of this judgment, I dissent, and for these reasons :

The action is not *debt,* but assumpsit. And the provision of the Act of 1805, mentions only "actions of *debt".*

"A *casus omissus* can, in no case, be supplied by a Court of Law, for that would be to make laws". (*Jones vs. Smart,* 1 *Durn. & E.* 52.) To the same effect, is *The King vs. Powell,* (4 *do.* 576.)

In *Brandling and Barrington,* (6 *B. & C.* 475,) cited in *Dwarris* on Statutes, 711, Lord *Tenderden* said : "the process under which the Sheriff seized and sold the goods in question, was not process of execution on a judgment—it was not, therefore, within the words of the Statute. But it is said, it was within the Equity. Speaking for myself alone, I cannot forbear observing, that I think there is always danger in giving effect to what is called the equity of a Statute ; and that it is much better and safer to rely on and abide by the plain words, although the Legislature might possibly have provided for other cases, had their attention been directed to them". BAYLEY, J. said : "I certainly think that the present case comes within the mischief intended to be remedied by the *Stat.* 8 *Anne c.* 14, §1, and I should have been better satisfied if it could have been brought within the fair construction of the words of that enactment. But I think we should be attributing too comprehensive a meaning to the words of the Statute". HOLROYD, J., said : "This case does not appear to

have been contemplated by the Legislature, although it may, perhaps, be within the mischief which they intended to remedy by the 8 *Anne, c.* 14".

" The result", says *Dwarris*, "is, that to bring a case within the Statute, it should be not only within the mischief contemplated by the Legislature, but also within the plain, intelligible import of the words of the Act of Parliament". (*Ibid.*)

I think he is warranted in saying this.

Now, the action of assumpsit is not within " the plain, intelligible import of the words" of the aforesaid provision of the Act of 1805. Assumpsit is not a form of action which is included in the form of debt.

And it cannot be assumed, that assumpsit is even within the *mischief.* contemplated by this provision of the Act of 1805.

All Statutes of Limitation are in derogation of common right. They say, in substance, that one man shall, without consideration, have what belongs to another, if, by any means, he can get hold of it, and can escape being sued for it, by the other, for a specified length of time. By the Common Law, a right never died, and for every right there was a remedy ; and, therefore, as the right never died, the remedy never died.— But the Statutes of Limitation declare, that when a right is asserted against you, all you have to do, to protect yourself from it, is to say—true, this right may exist against me—I cannot deny that, but then it has done so for these several years, and, *therefore,* it ought not to be asserted against me. Such Statutes as these, the English Courts, of the era of our Revolution, and of a long period preceding our Revolution, held to be " odious", and to be subject to a strict construction.

Now, by a strict construction of the said provision of the Act of 1805, assumpsit is not within the *mischief,* even, which the provision had in view, but only debt is.

" An action of *assumpsit* may not be barred by the Statute, when to an action for *a tort, upon the same demand,* the Statute may be pleaded". This is the language of *Angel,* in his work on Limitations, §5—a work, one of the leading objects of which seems to be, to make the pleading of the Statute of

Limitations respectable. And what reason can be given for this, except that Statutes of Limitations are such Statutes as are to be construed strictly; and that in Statutes to be construed strictly, nothing is to be considered within the *mischief*, but what is within the words.

But not only is assumpsit a *casus omissus* from this provision of the Act of 1805—it is also a *casus expressus* of another provision of that Act. Assumpsit is provided for by another provision of the Act of 1805. Sec. 4 declares, "that all actions upon the case, other than for words, shall be commenced and sued within four years next, after the cause of such action or suit hath accrued, and not after". (*Clayton's Dig.* 271.)

Now, the words, "actions upon the case", include actions of assumpsit. *Blackstone* says, "a promise is in the nature of a verbal covenant, and wants nothing but the solemnity of writing and sealing, to make it absolutely the same. If, therefore, it be to do any explicit act, it is an express contract, as much as any covenant, and the breach of it is an equal injury. The remedy, indeed, is not exactly the same, since, instead of an action of covenant, there only lies an action *upon the case*, for what is called the *assumpsit* or undertaking of the defendant". (3. 157.) Indeed, in *Comyn's Digest of the Law*, there is no such title as that of "assumpsit". In place of such a title, there is only the title, "action upon the case upon assumpsit". And when we come to trace the history of the action of assumpsit, as we now call it, we find that it exists only by virtue of having been forced into and made a part of the action on the case, a process to which it was only, after long years, and many assaults, that that action could be made to submit. (3 *Reeves Eng. Law*, 244, 394. 4 *do.* 171, 380, 527.)

To be more particular—in *Chandler vs. Villett*, it was assumed, as a matter of course, that assumpsit was included within the words, "all actions upon the case", in the Statute of Limitations of 21 *James I.* (2 *Saund. R.* 120, 121.) The only doubts was, whether it was also included in the *saving*

*clause* of that Act, as to infants and others under disability, that clause not having in it the expression, " *all* actions upon the case", but only this, " actions upon the case *for words*". The Court held it to be within the saving. And the Acts of 1805 and of 1767, of this State, are both, in this respect, the same as the Act of *James.*

Indeed, the word assumpsit does not occur in the Statute of Limitations of the 21st of *James I.*; or in this Act of Georgia, of 1805, or the previous Act of 1767 ; or in any other Act of Limitations, of England or of Georgia. Yet, each of these named Statutes has been oftener, probably, applied to assumpsit, than to any other form of action. How could this be? Only because the action was included in the expression used in the Acts, " all actions on the case".

This fourth section of the Act of 1805, therefore, in saying, as it does, that " *all* actions upon the case, other than for words, shall be commenced and sued within four years" after the accrual of the cause of action, says that all actions of *assumpsit* shall be brought within that term—that is to say, it says that all actions of assumpsit shall be governed by *this* section, and by consequence shall not be governed by the provision aforesaid, in another section of the Act, which mentions debt on judgments, other than judgments of the Courts of this State.

It is true, that our Judicial system has abolished forms of action, and in their place, has put simply petition ; but it is no less true, that a construction, both Legislative and Judicial, of that system, has prevailed from its origin, which requires the petition to assume the likeness of a form of action—a construction which gives us petitions in ejectment, petitions in trover, in case, in debt, and so forth—that is to say, petitions in the *likenesses* of those several forms of action. And this construction, in making petitions take the likenesses of the old forms of action, also makes them take the incidents of those forms. A petition in ejectment, has the incidents of ejectment —in debt, the incidents of debt—in case, the incidents of case; that is to say, with respect to limitations in Statutes,

this construction makes those limitations which limit debt, limit *petitions* in debt—those which limit case, limit *petitions* in case.

The case before this Court, is a petition in assumpsit. That is to say, a petition in case, and not a petition in debt. It follows, therefore, that the limitation in the Act of 1805, which limits case, is the limitation which limits this petition ; and that the limitation in that Act, which limits debt on judgments, other than the judgments of this State, is not the limitation which limits the petition.

But even if this latter limitation were the one which applies to the petition in this case, the result would not, in my opinion, be changed ; for I consider that limitation to stand repealed by the Act of 1806, reviving the Act of 1767. (*Clay. Dig.* 344.)

This revived Act of 1767, declares, that "*all* actions of. debt, grounded upon *any* lending or *contract without* special-ty, shall be commenced and sued, within four years, next after the cause of such action or suit, and not after".

Now, debt is an action *ex contractu ;* and, therefore, *all* actions of debt are founded upon *contracts* of some sort. An action of debt on a judgment of another State, is, therefore, founded upon contract. And all contracts are contracts, either with "specialty", or "without specialty". A contract with specialty, is a contract under seal, and no other sort of a contract is a contract with specialty. (*Bouvier's Law. Dic.—* '*Specialty*'.) A judgment is not under seal—certainly not under the kind of seal meant in the definition of specialty, the seal of the parties to it.

A contract, therefore, of which the judgment of a Court of another State is evidence, is a contract "without specialty".

Being a contract "without specialty", the action of debt, upon it, is expressly limited by the Act of 1767, revived by the Act of 1806.

And as the limitation in the revived Act, is different from that in the Act of 1805, it repeals that in the Act of 1805.

These are my reasons, in brief, for thinking that the plea is not supported by the Act of 1805.

Perhaps I might stop here. But the *form* of the plea justifies, if it does not require me to go further—to go to the extent of saying whether I think the plea is supported by *any* Act of Limitation. In a few words, I will go this length.

If the plea is supported by any Act of Limitation, it must be, I think, by the Act of 1767, revived by the Act of 1806, and by the part of that Act which declares, that all "actions upon the case, (other than for slander")—an expression which includes all actions of assumpsit—shall be commenced within *four* years *next, after the accrual of the cause of action.*

I think it is not supported by this part of that Act, because the cause of action, according to the facts in the case, accrued within four years before the commencement of the suit.

The judgment sued on, was obtained in 1838. Walker, the defendant in it, did not then, or ever afterwards, reside in Georgia. In 1848, he died, in Alabama. In 1850, Sanford took out letters of administration on his estate. In 1851, this suit was commenced.

Now, until letters of administration were taken out, *no cause of action ever accrued* to the plaintiff.

In *Douglas vs. Forest,* (4 *Bing.* 686,) the Court say, "although the injury of which the plaintiffs complain, has existed more than six years, yet, they had no cause of action until there was some person within the realm, against whom the action could be brought. Cause of action is the right to prosecute an action with effect. No one has a complete cause of action, until there is some one he can sue. The deceased was never in England, after the cause of action accrued against him. After his death, there was no person in England against whom the plaintiffs could proceed, until the defendant took upon himself the execution of his will".

To the same effect, is *Murray vs. The East India Co.,* (5 *Barn. & Adolph.* 204); and *Cary et ux. vs. Stephenson,* (2 *Salk.* 421.) *Perry vs. Jenkins,* (1 *Myl. & C.* 118.)

These decisions are, it is true, upon the Act of Limitations of the 21 *James I;* but that Act is the same, in respect to the matter under consideration, as the Act of 1767. And, doubt-

less the Act of 1767 was intended to be construed in the sense of the Act of *James,* in all particulars, except those in which it used language different from that of that Act.   And those points of difference consist chiefly in this : the terms of limitation are shorter in the Act of Georgia,. than in the Act of ·*James.*   So that,  in any view of the case, I think the plea ·is insufficient.