WILLIAM L. WHITMAN, plaintiff in error, *vs.* WILLIAM McCLURE *et al.*, defendants in error.

An attachment was sued out on an account more than four years after it was due; but the debtor had left the state before the bar of the statute had attached, and has never returned to reside in the state. The defendant pleaded the statute of limitations and other pleas:

*Held*, that the defendant having appeared and made defense, the proceedings became a suit as in cases of personal service, and the removal of the defendant from the state operated a suspension of the statute from the time such absence commenced.

Attachment. Statute of limitations. Before Judge HOPKINS. Catoosa Superior Court. October Adjourned Term, 1873.

William M. Whitman commenced suit by attachment against William McClure and James McClure, on an account for $896 84, the first item of which was dated September 7th, 1865, and the last item November 13th, 1866, with two credits thereon, the first of $1 00, dated February 3d, 1866, and the second of $6 25, of date March 9th, 1867. The claim is consolidated on the last page of the bill of particulars to the declaration attached, as follows:

" *William and James McClure,*

                                    To *Whitman & Yarnell*, DR.

| " 1872. | July | 22d. | To balance on account to date............$498 04 |
| " | " | " | Interest to date on same................... 263 80 |
| " | " | " | Profit in saw-mill partnership............ 100 00 |
| " | " | " | Interest on same from January 1st, 1867   35 00 |

                                              $896 84 "

The attachment was levied on January 22d, 1873, by serving process of garnishment on Benjamin F. Clark. The defendants appeared and pleaded the statute of limitations.

The evidence presented the following case :

In July or August, 1865, the firm of Whitman & Yarnell, of which the plaintiff was a partner, contracted with the defendants to build a saw-mill on the land of the latter.    Plaintiff's firm was to advance the money for the aforesaid purpose, for the use of which they were to have the profits of the mill for the first twelve months after its completion.    The principal was to be repaid out of the first funds from the mill going to the defendants.    About the time work was commenced, one of the defendants stated to plaintiff's firm that it would be necessary for them to get some accommodation from the store for their families during the erection of the mill.    Under these circumstances the account sued on was contracted.    In March, 1871, the plaintiff bought out Yarnell's interest in the store, together with all the books, notes and accounts, including the one sued on.    William McClure moved to Chattanooga, in the state of Tennessee, in the latter part of the year 1869, or first of 1870.    James McClure moved to the same place on November 1st, 1870.    Neither have since resided in the state of Georgia.

The court charged the jury as follows : "If there was no special contract when the debt should become due, and if the account was a continuous and entire transaction, it would then become due on the date of the last item, and the statute of limitations would run from the date it became due, and if the defendants were then resident citizens of this state, and they removed from this state and became resident citizens of another state, and did not return to this state to reside, and the suit was not brought within four years from the date of the last item charged in the account, then the plaintiff would not be entitled to recover.    The defendants' removing from the state after the statute had commenced to run, and not returning to reside in the state, did not suspend the running of the statute, and the accounts would be barred if four years elapsed."

The jury returned a verdict in accordance with the above instructions.    A motion for a new trial was made on account

of error in the charge. The motion was overruled, and the plaintiff excepted.

A. T. HACKETT; W. H. PAYNE; J. A. W. JOHNSON, by R. J. McCAMY, for plaintiff in error.

E. M. DODSON, for defendants.

TRIPPE, Judge.

Section 2929, Code, provides, "if the defendant in any of the cases herein named shall remove from this state, the time of his absence from the state, and until he returns to reside, shall not be counted or estimated in his favor." The court below, in the charge to the jury, and in his decision on the motion for a new trial, construed this section to mean that the defendant must not only have removed from the state, *but must also have returned to reside in the state* before the action was commenced, else the plaintiff could not avail himself of the exception to the statute, and there was no suspension; that is, there must be both a *removal* and a *return to reside*, to disable the defendant from counting the time of the absence in his favor. Whether the court was right in this construction was the question presented, and the only one we decide.

The act of 1852, pamphlet page 239, was an act entitled "an act to stop the running of the statute of limitations in all cases where the defendant shall abscond, or remove beyond the limits of this state," and enacted that the statute "shall, in all cases, cease to run or operate in favor of any person against whom any right of action shall accrue, who shall abscond or remove, *before action is brought,* beyond the limits of this state *until his or her return to the state."* The act of 1856, pamphlet acts of 1855 and 1856, page 235, which was a codification of the acts of limitation, enacts in the 23d section "that when any person against whom a right to sue exists shall remove from this state, the times mentioned in this statute in which suits are to be brought, *shall cease to be computed in his favor from the time of such removal, and so continue* until

he shall return and fix his residence in this state." Do not both of these acts plainly say that the removal of the defendant from the state, *ipso facto*, works a suspension of the statute, and the suspension continues until in the first he *returns to the state*, and in the second, until he *returns to fix his residence in the state.* Under the act of 1852 he may have remained absent from the state twenty years, but if he returned to the state, was found in the state, so that he could be served with process, he could be sued, and could not plead the statute. Under the act of 1856, if his return and *fixing his residence* in the state were both necessary to occur before it would operate a suspension of the statute, then he could return to the state as often as he might please, and sojourn as long as he pleased, so he did not fix his residence, and could defy the creditors from whom perhaps he had fled. Surely no act ever meant this. The provision in reference to *returning to reside* in the state is first found in the act of 1856. This was doubtless inserted to prevent an abuse by debtors of the former provisions on this point, that a mere return to the state to sojourn for a season might operate to revive the running of the statute. Cases of this sort had occurred. Debtors who had removed and been absent a few years had come back on a visit, remained awhile, and left again for their new home. It was claimed that this return operated to satisfy the terms of the statute; and they afterwards set up, on a future return, and in some instances to become residents again, that the bar of the statute had, by reason thereof, fully attached in their favor. There had been decisions in the circuit courts to this extent, and it was to prevent the frauds that might thus be practiced by these temporary and brief returns, that it was required in the act of 1856 that a *residence* must be *fixed*, or the suspension would continue. Thus the law stood when the Code was adopted. The 2929th section of the Code is, in substance and meaning, what the act of 1856 was. That section says "the time of his absence from the state, and until he returns to reside, shall not be counted or estimated in his favor." This does not mean that the statute still runs after his removal unless *he returns*

*to reside.* If it does, the debtor, if he once resides abroad the statutory period of limitation, might be half his time within the state, and if he did not become a resident, he could defy his creditors, although it is specially provided by section 3416, Code, that "a citizen of another state passing through this state may be sued in any county thereof in which he may happen to be at the time when sued." We do not think that the rule recognized in *Bishop vs. Sandford,* 15 *Georgia,* 1, conflicts with this decision in any way. It is there said that courts will not apply a forced construction to bring a party within an exception to the statute. We do not think we do this; but, rather, it would require a forced construction of section 2929 to take the defendant out of it.

The defendants having appeared and made defense to the attachments, the proceedings became a suit as in cases of personal service, and the removal of the defendants from the state operated a suspension of the statute from the time of such removal, and the suspension continues until their residence be fixed in the state. Such, we think, is the plain meaning of the act of 1856, and section 2929 does not change it.

The attachment in this case was levied by serving a summons of garnishment. It does not appear that defendants had any property, real or personal, on which it could have been levied, or that plaintiff could, at any other time after defendants left the state, have levied an attachment.

Judgment reversed.