## 288, 289.   WEAVER *v.* DAVIS *et al.*

1. As a general principle, statutes of limitation are subject to no exceptions, unless such exceptions be expressed.

(a) Notwithstanding this general rule, the courts will imply judicial exceptions from "invincible necessity," where it is legally impossible for the plaintiff to sue within the time limited.

(b) The absence or the removal of the defendant from the State is a statutory, and not a judicial exception.

(c) The limitation statute of March 16, 1869, wherein all causes of action which accrued prior to June 1, 1865, were required to be sued prior to January 1, 1870, contained no exception saving from its operation suits

against defendants who had removed beyond the limits of the State, and no such exception can be implied as to actions falling within its terms.

Certiorari, from Newton superior court—Judge Roan. September 27, 1906.

Argued April 29,—Decided May 16,—Rehearing denied May 28, 1907.

*Cornwell & Gunn, Greene F. Johnson, J. D. Kilpatrick,* for plaintiff in error. *Rogers & Knox,* contra.

POWELL, J. On February 5, 1862, Weaver executed his two promissory notes, payable to Nancy Weaver or bearer, due twelve months after date, for $175 cach. The notes afterwards became the property of the plaintiffs. In 1866, Weaver left the State of Georgia and went to the State of Texas, and has never returned to reside in this State. In 1905 Weaver became entitled, by will, to a legacy of the value of some three thousand dollars, in the hands of an executor in this State; and the plaintiffs sued out an attachment and garnishment. The declaration in attachment set out the facts stated above. The defendant resisted the action, by demurrer, asserting that the cause of action having accrued prior to June 1, 1865, the same became barred on January 1, 1870, by virtue of the fourth section of the limitation statute of March 16, 1869. The county judge sustained the demurrer; the plaintiffs brought certiorari; in the superior court the certiorari was sustained, and the judgment of the county court reversed. To this judgment of the superior court the defendant excepted, and brings error to this court.

The statute of March 16, 1869, was drastic in terms. It was broad and sweeping. In substance it provided that all suits upon causes of action which accrued prior to June 1, 1865, should be brought by January 1, 1870, and not thereafter. No exceptions were made, save only cases against certain fiduciaries, for fraudulent conduct. No reference was made in the act to any of the ordinary exceptions to the running of limitation, appearing then, as now, in the code. It is contended by the plaintiff in error that it was not the intention of the legislature to repeal, or to render unavailing, the provision then existing in the code and now contained in the Civil Code, § 3783, viz.: "If the defendant in any of the cases herein named shall remove from the State, the time

of his absence from the State, and until he returns to reside, shall not be counted or estimated in his favor." At first blush, this view seemed to us to be tenable, but after a thorough examination of the decisions which have been rendered in relation to this act (and the Supreme Court had the statute before them for consideration very frequently during the decade immediately following its passage), we have reached the conclusion that the county judge was correct, and that the statute is subject to no exceptions other than those contained therein, save only that class of exceptions applicable from necessity to all limitation laws and known as judicial exceptions. His honor, Samuel H. Sibley, judge of the county court of Greene county, presided at the trial of the cause, and filed with his judgment sustaining the demurrer an opinion. This eminent young jurist has gone into the question so carefully, and has collated and distinguished the authorities so well, that we are content to incorporate his opinion herein, with only a few additional remarks. Judge Sibley's opinion is as follows:

"The note sued upon is not under seal, is dated February 5, 1862, and is due one year thereafter. In February, 1863, limitation began to run, until suspended by the legislature of 1864. In 1866 the defendant removed to Texas, and has since resided there. Under the act of 1855 and the code provisions since, this removal suspended the statute of limitation, even after the repeal of the suspending statutes passed during the war; and made an attachment of the debtor's effects in this State possible at any time prior to the expiration of the limitation period after his return to reside in this State. *Whitman* v. *McClure*, 51 *Ga.* 590. The attachment in this case, though sued out forty-five years after the maturity of the debt and the accrual of the cause of action thereon, would be in time, unless barred by the provision of the act of 1869. That act, stated generally, provides, that actions not barred in March, 1869, on notes maturing prior to June 1, 1865, should be brought by January 1, 1870, or the right of the party plaintiff, and all right of action for its enforcement, should be forever barred. In its last section the act provides that causes of action accruing since June 1, 1865, should be 'controlled and governed by the limitation laws as set forth in the revised Code of Georgia.' It does not appear in the pleadings whether at all times since the removal of the defendant from the State, he has had property here

capable of attachment; nor is that question material. The note is the cause of action, even where the special remedy by attachment is pursued; and it must be concluded that this is an action on a note 'accruing prior to June 1, 1865,' and within the provisions of the act of 1869, and not within the 'limitation laws as set forth in the code.'

"Is the act of 1869 a statute whose only purpose was to make a uniform and short period of limitation, equal to nine months and fifteen days, for the classes of action dealt with by it, in substitution of the varying and longer periods named in the code, leaving all other provisions of the limitation laws, and especially the 'exceptions and disabilities,' applicable to this new period so prescribed? Or was it intended to be, for the classes of actions covered by it, generally described as 'ante-bellum claims,' the exhaustive and only limitation law, without other exceptions than stated in its face? As an original proposition, I think the latter was its purpose; that it was intended to meet a situation unprecedented, and to compose and set at rest all contentions dating beyond that period, that saw not only political but financial revolution, that had altered all conditions and disturbed all calculations, removed from life probably nine tenths both of parties and witnesses to disputes, and made imperative a complete readjustment of all business affairs,—that it was intended to be as near a statute of bankruptcy as the State could enact. Constitutional considerations, however, have made this purpose not free from embarrassment, and have produced interpretations of the statute, by our Supreme Court, perhaps not free from contradiction. In *Hobbs* v. *Cody,* 45 *Ga.* 478, it was held that a ward arriving at majority in September, 1869, was not barred in August, 1870, from suing her guardian for her estate, received in 1860. This case has been cited in *Lake* v. *Hardee,* 57 *Ga.* 458, 487, as authority for the proposition that the act of 1869 did not run during a plaintiff's minority. It really ruled that the plaintiff's right of action against her guardian did not accrue until maturity gave her the right to demand possession of her estate. It has been pointed out, too, that the suit was for the estate as it was in 1869, and not for a devastavit prior to June, 1865, and so not within the act of 1869. *Jordan* v. *Ticknor,* 62 *Ga.* 129. Compare *Windsor* v. *Bell,* 61 *Ga.* 671 (2).

"In *Adams* v. *Davis,* 47 *Ga.* 339, the question was whether a suit, validly begun within the period named by the act of 1869, could be renewed within six months of its dismissal, after January 1, 1870, by reason of the exception to that effect found in section 2881 of the Code of 1868. That section is in title 7, chapter 9, article IX of that code, which article is entitled, 'Limitations of actions on contracts.' The article is subdivided into three sections: 'Periods of limitations,' 'Exceptions and disabilities,' and 'New promise.' §2881 is one of the paragraphs of the second section named. The question was squarely made whether the act of 1869 merely substituted the first of these sections as to the period of limitation, or whether it was, as to the actions covered by it, the sole law on the subject of limitation. A majority of the court reached the latter conclusion, on reasoning that would eliminate the whole of the statutory provisions contained in the second and third sections of the article of the code in question. This conclusion was followed by the same majority in the cases of *Macon R. Co.* v. *Bass,* and *McConnell* v. *Fain,* 52 *Ga.* 13, and affirmed by a full court in *Goss* v. *Roberts,* 54 *Ga.* 494. The reasoning is repeated and enforced, and the conclusion followed again, in *Reese* v. *Tollerson,* 70 *Ga.* 443. Meanwhile, in *Seminary* v. *Atwood,* 50 *Ga.* 382, the question arose whether the twelve-months exemption from suit of the debtor's administrator was an excuse for not suing by January 1, 1870, but it was not decided. In this case attention is given to the constitutional phase involved, as to giving a plaintiff a reasonable time to assert his right against the debtor. At the previous term in the case of *George* v. *Gardner,* 49 *Ga.* 441, it had been held that the nine months and fifteen days allowed by the act was, in ordinary cases, reasonable, and that the statute was constitutional. In *Simmons* v. *Moseley,* 55 *Ga.* 35, where the maker of a note due before June, 1865, had moved to Texas and died, a suit against a Georgia administrator who became subject to suit was held barred. It was stated that the case was within 'the letter of the statute,' that is, the suit had not been filed by January 1, 1870, and it was further stated that if there was an implied exception because of the death and want of representation of the debtor, the spirit of the statute would still bar it. [The suit was not brought until more than 9 months and 15 days after the judicial exception brought about by

the death of the debtor had ended.] In *Jordan* v. *Ticknor, 62 Ga.* 123, it was stated that §2875 of the Code of 1868 (§2926 of the Code of 1873), being one of the 'exceptions and disabilities' referred to above, its provisions saved a minor from the operation of the act of 1869 during his minority, being unrepealed by that act. The suit was nevertheless held barred. In both of these cases it was held that the act barred the suit. The recognition of exceptions and disabilities therefore did not in any way alter the result reached and the judgment rendered, and the expressions of opinion in that respect might be treated as obiter. In the former case the removal to Texas did not figure at all in the case. The debtor was dead before 1865. In *Edwards* v. *Ross, 58 Ga.* 147, lunacy and non-residence of the debtor existed, but it is not even asserted that they would have tolled the act of 1869. In this, as in other cases, however, nine months and fifteen days had elapsed since the removal of impediment to suit, and the suit was held in any case to be barred. It will therefore be seen that there has been no judicial opinion, even obiter, expressed to the effect that removal from the State of the debtor would save a claim from this act.

"The recognition of exceptions in favor of infants and unrepresented estates, and the exemption of administrators from suit for twelve months, have been obiter, except in the case of *Lake* v. *Hardee, 57 Ga.* 460 (6). It was held there, in the headnote, that the cause of action *'did not accrue,* until majority or the appointment of a guardian.' This language, whether good law or not, would *not amount to a holding that all the exceptions and disabilities of the code* applied to the act of 1869, nor even that that in reference to minors applied: but it was a simple construction of the word 'accruing,' in the act. The expression in the opinion, that the act of 1869 did not run against minors, for which *Hobbs* v. *Cody, 45 Ga.* 478, is cited as authority, is utterly unjustified by the case cited, which did not involve a liability to which the act was applicable at all. See *Jordan* v. *Ticknor, 62 Ga.* 129. But if the cases in *55 Ga.* 35, *57 Ga.* 460, and *62 Ga.* 123, supra, are authority that the exceptions of the code there dealt with were of force as against the act of 1869, and, therefore, the exception as to non-residence is by analogy to be held of force, it must be replied that it has with greater positiveness been held that the exception as to renewal in six months was not of force; and the same

analogy would exclude the exception as to removal from the State. The latter point having been ruled by a unanimous court in *Goss* v. *Roberts,* 54 *Ga.* 494, and that decision never having been reviewed or overruled, any conflict in the principle of that decision and that of the other decisions referred to must result in adherence to the earlier ruling.

"The constitutional requirement that a limitation statute should give a plaintiff a reasonable time to enforce his right might necessitate the recognition of some exceptions to the requirement that suits should be commenced by January 1, 1870. This seems to have influenced the court in some of the expressions recognizing such exceptions. There was no such reason for giving a plaintiff a second chance under the renewal exception; and it was denied. It may be equally said that in the case of removal from the State, naturally and logically the action follows the debtor to his new home. Georgia is under no constitutional or other obligation to afford any remedy against the removed debtor in her courts. The remedy here by attachment might constitutionally be abolished altogether. To refuse to preserve the right to sue a removed debtor, as against the ordinary statute of limitations, in ordinary circumstances was never considered an anomaly, either in England or in Georgia. *Bishop* v. *Sanford,* 15 *Ga.* 1. In the extraordinary circumstances engendered by the war, there was certainly no constitutional or other legal necessity or propriety in recognizing such an exception to the limitations prescribed. There is less hardship in requiring the creditor to follow his debtor to his new residence to enforce his debt, than in requiring the debtor to answer nearly a half century afterwards, when even the common law would presume payment in twenty years. The act of 1869 was pre-eminently intended as a 'statute of repose.' Its object was not only to protect defendants from their ancient misfortunes, but also, as a matter of public policy, to protect our courts from controversies over these old, uncertain, perhaps inequitable, demands of other days. If the want of a defendant to be proceeded against in Georgia is to hold off the act of 1869, there is no reason why fifty years hence an administrator upon some estate of a long-deceased non-resident debtor might not be appointed, and the property administered to such claims. There being no authority to the contrary, and no constitutional difficulty to be encountered,

I conclude that a plaintiff, himself under no disability, and having in March, 1869, an unimpeded right to sue his debtor resident in another State in the courts of that State, lost his remedies in the Georgia courts by failure to enforce his debt by action taken prior to January 1, 1870."

We will only add that it is a general rule that limitation laws are subject to no exceptions, unless expressly provided. Notwith-standing this rule, a limited class of exceptions not provided by statute, but arising out of invincible necessity, are universally recognized. 19 Am. & Eng. Enc. Law (2d ed.), 212 et seq. Exceptions of this latter class arise where such a state of affairs exists as to render it legally impossible for the plaintiff to sue within the time limited. Of this class are those cases wherein the plaintiff is prevented from exercising his remedy by a paramount power, as injunction or other process of a court, direct or indirect legislative action, the death of either of the parties, the abolition of a city's charter (as to suits by its creditors), the existence of a state of war, non-existence of a court wherein the suit may be brought. Absence of the defendant from the State or beyond the seas has never been regarded, either at common law or in American jurisprudence, as such an exception. An examination of the authorities cited by the defendant in error will show, that while the Supreme Court in these cases recognized the judicial exceptions as applicable to the statute of 1869, it has never, except in certain mere statements obiter, recognized any other exceptions.

*Judgment reversed. Russell, J., dissents.*